ANNA LEE TAYLOR, Respondent, v. ST. JOSEPH
GAS COMPANY, Appellant.

**Kansas City Court of Appeals, January 11, 1915.**

1. **DAMAGES: Gas: Ornamental Trees: Damage: Evidence.**
   Where evidence showed a gas company laid its pipes along a
   street near to the parkway in which the adjoining owner's
   ornamental shade trees were growing, and that leaks were found
   in such pipes, and dirt near the trees was discolored and filled
   with an odor of gas, and the trees died, a verdict in favor of
   the owner for damages will be sustained.

2. **———: Gas Company: Degree of Care.** A gas company is not
   an insurer, but it is *held* to a degree of care commensurate
   with the dangerous character of the substance handled.

3. **———: Instruction: Division of Damages.** Where there was
   evidence tending to show that plaintiff's shade trees were killed
   by defendant's gas escaping from its mains and also evidence
   tending to show that they were injured and may have died
   from the work of borers or worms, it was proper to refuse an
   instruction directing the jury not to assess the whole damage
   against the gas company. The proper instruction would have
   been to have directed the jury in assessing the value of the
   trees against the gas company, if it killed them, to take into
   consideration their damaged condition by reason of the borers.

Appeal from Buchanan Circuit Court.—*Hon. C. H.
Mayer*, Judge.

AFFIRMED.

*William E. Stringfellow* for appellant.

*Duncan & Utz* for respondent.

ELLISON, P. J.—Plaintiff's action is to recover
damages for the loss of six shade and ornamental

trees growing in the parkway along the sidewalk in front of her residence property in the city of St. Joseph. She recovered judgment in the circuit court.

It appears that plaintiff resides at the northwest corner of Twenty-fourth and Francis streets in St. Joseph and that four soft maple trees were growing on the former and two hard maples were growing on the latter street. That defendant is the Gas company which serves illuminating gas to the inhabitants of the city, and has its pipes, or mains, laid in each of these streets within a few feet of where the trees were growing. The ruling of the trial court upon instructions is relied upon to sustain the appeal.

An instruction directing a verdict for defendant on the evidence was refused. It is conceded the growing trees died (save one about dead) but it is claimed by defendant that there was nothing to show the trees were killed by the escape of gas from its pipes. In view of the fundamental rule that under our law the verdict of a jury must be allowed to determine the fact in disputes between litigants, when there is any substantial evidence to support it, or any evidence from which reasonable inferences may be drawn in favor of the finding of the jury, the instruction was properly refused. The record very amply sustains that finding under this rule. As just stated, it is conceded that the trees were living and growing and that they began to wither and then died. The only question aside from the issue of negligence, was, what killed them? Defendant's escaping gas, or tree borers, which were shown to be worms hatched from eggs layed by insects under the bark of the tree, the worms, boring or eating their way under the bark around the trees until they sap its life. There was evidence tending to show that borers and evidence of their work were found in the trees and that they killed the trees; but

it fell far short of being conclusive and hence the jury could properly reject that theory.

On the other hand, there was abundant evidence to sustain plaintiff's contention that the gas leaked from the pipes which were shown to be defective. These defects and leaks were clearly shown—were practically not denied—but defendant insists they were not at a time or place where the escaping gas could have killed the trees and considerable argument is advanced in an attempt to demonstrate this. But the fact remains that the earth was colored or tinged green and had an odor of gas about it. Defendant, to offset this, says that artificial gas was used and that it has no appreciable odor and that if it escapes it will turn the earth a grayish color. But natural gas is comparatively a new commodity in St. Joseph and the pipes were old ones which had seen service in carrying artificial gas throughout the city. Samples of the earth between the trees were placed in jars and exhibited to the jury. In addition to this it was shown that though the trees leafed out in the spring, the leaves began to wither, or "crimple up," beginning at the bottom and extending to the top, and that the grass died in the parkway.

It is certainly true, as claimed by defendant, that it is not an insurer, and that though its gas killed the trees, negligence must be shown. In 20 Cyc. 1170, it is stated that, "A gas company is not liable as an insurer for injuries sustained by reason of the escape or explosion of its gas, but is held to a degree of care that is commensurate with the dangerous character of the substance handled." But we think there was ample testimony to support a finding of negligence. "The foregoing rule requires not only a careful laying of sound pipes, but also requires an efficient system of inspection, oversight and superintendence; the company must use due and reasonable care in the inspec-

tion of its pipes, and must repair defects in the same, whether caused by its own fault or not. . . . If leaks or defects in the company's pipes occur because of faulty construction or otherwise through the company's fault it is liable without notice for any resulting injury to person or property." [Ibid, 1172.] The St. Louis Court of Appeals decided that in an action against a gas company for damages caused by the defendant's negligence permitting the escape of gas a prima-facie case is made out by showing the break or leak in the main and the consequent escape of the gas, which caused the injury. [Sipple v. Gas Light Co., 125 Mo. App. 81. See also Paden v. Van Blarcom, 181 Mo. 117.]

The instructions for defendant were liberal and leave it no ground of complaint. Those for plaintiff were in noway misleading or objectionable. The first submitted the case on the hypothesis that defendant must have been guilty of negligence in permitting the escape of the gas; that the gas permeated the earth about the trees and thereby killed them. Then defendant's first instruction pointedly directed the jury that if they believed the trees were killed from any other cause than gas, they should find for defendant. Others stated defendant's degree of care and its duty of inspection of its pipes, liberally for it.

We are asked to reverse the judgment for the reason that the court refused instructions directing the jury "not to assess the whole damage" against it if they believed that "there were other conditions or causes which also damaged plaintiff's trees." This referred to the work of the borers, or possibly, the effect of dry weather. These instructions were properly refused. If the borers, or weather had injured the trees before defendant killed them with its gas, they were not so valuable and if the jury believed this, they doubtless considered it in fixing upon the amount

of plaintiff's loss. [Defendant cites Rauck v. Cedar Rapids Gas Co., 116 Iowa 11.] That case was where the plaintiff sought to set aside a verdict in his favor on the ground that the sum assessed against the gas company for damaging his trees was not large enough. But the court held that as the evidence showed the trees had also been damaged from causes other than escaping gas, the jury may properly have considered they were of little value and hence returned a verdict for a small amount. The instructions in that case were not like those asked by defendant in this case. In that case the jury was instructed to "inquire as to the extent of the damage to the plaintiff." That is, in effect, the damage the gas company did in killing trees already injured. Here the instructions were so worded that they would have the jury to believe they were to divide the damage. Parties are entitled to plain instructions pointedly submitting their theory of the case; and if defendant here had asked instructions requiring the jury, in assessing the damage for killing plaintiff's trees with escaping gas, to consider their already damaged condition, or their lessened value, by reason of the weather or the action of the borers, it would have been proper for the trial court to have given them.

We do not find error in the record and affirm the judgment. All concur.